McMILLIN, C.J.,
concurring:
¶26. I concur in the decision of the majority to affirm this conviction. However, it is my view that the majority’s analysis regarding the court-ordered amendment to the indictment does not fully address the legal issues raised in this appeal. I would conclude that the amendment was allowed in error but that, on the particular facts of this case, the error was harmless.
¶ 27. First, it must be observed that the legislative practice of defining criminal conduct in this state, insofar as attempts at criminal behavior are concerned, takes two different directions. In one instance, the State defines all the essential elements of the crime in one statute, but preserves by separate statute its right to punish those whose apparent purpose is to commit that crime but who fall short for reasons beyond their control. An example of this is the crime of grand larceny, as defined by Miss.Code Ann. § 97-17-41(1) (Supp.2003), considered in conjunction with the general “attempt” statute found at Section 97-1-7, which provides criminal punishment for one who does “any overt act toward the commission [of an offense], but [who] shall fail therein, or shall be prevented from committing the same.... ” Miss.Code Ann. § 97-1-7 (Rev.2000). In the other instance, the State defines the elements of the crime in a self-contained enactment where a particular crime is defined and one of the elements is framed in the alternative as either (a) accomplishing a particular act, or (b) attempting to accomplish the act. An example of this is found in the armed robbery statute, which defines the crime as either taking or attempting to take away the property of another by violence or by exhibiting a deadly weapon. Miss.Code Ann. § 97-3-79 (Rev.2000). Thus, once a person commits an act of violence or brandishes a deadly weapon in an effort to deprive another of property, an armed robbery has been committed without regard as to whether the culprit is successful in obtaining the property. In such a situation, though the concept of “attempt” comes into play in measuring the success of the culprit in actually obtaining the property, it is incorrect to speak of an “attempted armed robbery.” See Stevens v. State, 840 So.2d 785, 787(¶ 10) (Miss.Ct.App.2003).
¶ 28. The statute now under consideration in this case is of the latter variety; that is, it defines the crime as being the commission of an overt fraudulent act whose purpose is to permit the actor to obtain controlled substances without prop *733 er legal authority for doing so. Miss.Code Ann. § 41-29-144(1) (Rev.2001). Thus, it is the overt act of fraud or misrepresentation that constitutes the completed crime without particular regard as to whether the act accomplished its intended purpose of actually obtaining contraband narcotics.
¶ 29. The issue that presents itself, therefore, is what role, if any, the law relating to the general attempt statute (Section 97-1-7) has in relation to such crimes as that for which Irons now stands convicted. That is of some importance based on the fact that, in the case of an indictment for an attempted crime brought under Section 97-1-7, evidence showing unequivocally that the crime was, in fact, accomplished serves to invalidate a conviction on the attempt charge. Miss.Code Ann. § 97-1-9 (Rev.2000). Though there does not appear to be any case law directly on point, the necessary corollary to that proposition is that it would be improper to permit an amendment to an indictment brought under the general attempt statute to charge instead the completed crime since that would mean a conviction could be obtained under the amended indictment upon proof of facts that would render invalid a conviction obtained under the original indictment. It seems evident, without saying more, that such an amendment would so alter the nature of the charge as to be considered substantive in nature.
¶ 30. Is the same result mandated in, for instance, an armed robbery conviction when the State charges only an attempt to obtain property by one of the prohibited means defined in the statute but the proof shows unequivocally that the victim was, in fact, deprived of the property? No authority appears to be directly on point, but, on purely logical principles only, it would not appear that the same issues are raised. In such crimes as armed robbery and the fraudulent procurement of narcotics, the State’s interest appears to be in punishing — and hopefully deterring — certain types of behavior harmful to society that are undertaken with some underlying motivation. In the case of armed robbery, the State seeks to deter the actual infliction of violence or the inherently-dangerous brandishing of deadly weapons in a threatening manner when the aim of that behavior is to deprive another person of his property. In that situation, the harm to society has already been incurred before it is apparent whether or not the effort to obtain the property has succeeded. The State seems to intend to punish the act of violence or brandishing of the deadly weapon and, thus, considers the crime as having been accomplished and the injury to society to be essentially the same without particular consideration as to whether these harmful acts accomplished their intended purpose. This notion is borne home by the fact that robbery is a crime against the person rather than a crime of property even though its ultimate objective is the unlawful acquisition of property belonging to another.
¶ 31. Similarly, in the case before us, it would appear reasonable that the State is attempting to discourage any manner of scheme or artifice intended to fraudulently induce one rightfully in possession of controlled narcotics to part with that possession in a manner not authorized by law. Because of the necessary safeguards and precautions required of those in charge of administering the distribution of narcotic substances, the mere overt effort of attempting to improperly overcome or circumvent these legal safeguards has caused a societal injury that may not be, and often is not, significantly increased by the fortuitous event of whether the subterfuge is, or is not, successfully practiced. It is for that reason that the same crime has been accomplished whether or not the narcotics are actually obtained, and, in that sitúa *734 tion, it does not appear proper to let the perpetrator escape punishment simply because his efforts were perhaps more successful than the State originally gauged when framing its indictment.
¶ 32. It would be my view that the amendment to change from “attempted to obtain” to “obtained” was unnecessary. There was more than sufficient proof that Irons attempted to obtain contraband narcotics through various misrepresentations to the druggist. At that point, the crime as defined in Section 41-29-144(1) was accomplished, and evidence tending to show that her misrepresentations actually succeeded was surplusage.
¶ 33. In that regard, I would point out that there seems to be a legitimate question as to whether she did actually obtain the drugs by fraudulent means within the meaning of the statute since, in a case on the related crime of obtaining money through false pretenses, the supreme court has held that the false pretenses must be the “moving cause” in the result. For example, when a deputy sheriff, in the course of a criminal investigation, paid money for a bottle of oil being falsely represented by the seller as a cure for arthritis, a conviction could not stand because the officer did not rely on the representations when paying the money for the oil. Hughes v. State, 326 So.2d 469, 471 (Miss.1976). Similarly, in this case it is at least arguable that Irons’s efforts were not the moving cause in the delivery of the drugs since they were delivered to her primarily as a result of the secret directive of a law enforcement official at a time when the druggist had already become so suspicious of Irons that it is doubtful he would have filled the prescription anyway.
¶ 34. I, therefore, would affirm, but with this added explanation of why the amendment did not constitute reversible error.
SOUTHWICK, P.J., BRIDGES, LEE, AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.